# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSE MANUEL VARELA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CIV-17-650-BMJ ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jose Manuel Varela, seeks judicial review of the Social Security Administration's denial of his application for disability insurance benefits (DIB). The parties have consented to the exercise of jurisdiction over this matter by a United States Magistrate Judge. *See* 28 U.S.C. § 636(c). The Commissioner has filed the Administrative Record (AR) [Doc. No. 11], and both parties have briefed their positions.[1] For the reasons set forth below, the Court affirms the Commissioner's decision.

## I.   Procedural Background

On March 31, 2017, on remand from this Court, an Administrative Law Judge (ALJ) issued an unfavorable decision finding Plaintiff was not disabled and, therefore, not entitled to DIB. AR 643-55. The Appeals Council denied Plaintiff's request for review. *Id.* at 743-44. Accordingly, the ALJ's decision constitutes the Commissioner's final decision. *See Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Plaintiff timely commenced this action for judicial review.

---

[1] Citations to the parties' briefs reference the Court's ECF pagination.

## II.     The ALJ's Decision

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (explaining process); *see also* 20 C.F.R. § 404.1520. Following this process, the ALJ first determined that Plaintiff met the insured status requirements for DIB through December 31, 2017, and had not engaged in substantial gainful activity since March 17, 2012, his alleged onset date. AR 645.

At step two, the ALJ determined Plaintiff suffers from the following severe impairments: diabetes mellitus, obesity, gout, major depressive disorder, status post traumatic brain injury, posttraumatic stress disorder, generalized anxiety disorder, osteoarthritis of the knees, headaches, and sleep apnea. *Id*. at 646. At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. *Id.* at 646-48.

The ALJ next determined Plaintiff's residual functional capacity (RFC), concluding that:

> [Plaintiff can] . . . lift and carry 10 pounds occasionally and less than 10 pounds frequently. [Plaintiff] can sit for about 6 hours during an eight-hour workday and can stand and walk for at least 2 hours during an eight-hour workday. [Plaintiff] can occasionally climb ramps/stairs, balance, stoop, and crouch. [Plaintiff] cannot kneel, crawl, or climb ladders, ropes or scaffolds. [Plaintiff] can understand, remember, and carry out simple, routine, and repetitive tasks. [Plaintiff] can relate to supervisors and co-workers on a superficial work basis. [Plaintiff] can respond appropriately to usual work situations. [Plaintiff] can have no contact with the general public.

*Id.* at 649.

At step four, the ALJ determined Plaintiff was unable to perform any past relevant work. *Id.* at 654. At step five, relying on a vocational expert's (VE) testimony, the ALJ found Plaintiff could perform other work existing in significant numbers in the national economy. *Id.* at 654-55.

Therefore, the ALJ concluded that Plaintiff was not disabled for purposes of the Social Security Act. *Id.* at 655.

## III. Claims Presented for Judicial Review

Plaintiff alleges the ALJ erred in: (1) relying on the VE's testimony despite a conflict between the testimony and the Dictionary of Occupational Titles (DOT) job descriptions; (2) evaluating the State agency psychologist's opinion; and (3) failing to discuss significantly probative evidence. *See* Pl.'s Br. at 14-28.

## IV. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009); *see also Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (holding that the court only reviews an ALJ's decision "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied" and in that review, "we neither reweigh the evidence nor substitute our judgment for that of the agency" (citations and internal quotation marks omitted)). Under such review, "common sense, not technical perfection, is [the Court's] guide." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

## V. Analysis

For efficiency, the Court considers Plaintiff's claims out of order.

### A. The State Agency Psychologist's Opinion

A State agency psychologist, Dr. RC, Ph. D., reviewed Plaintiff's mental health treatment records at the reconsideration level. AR 86, 94. In the "Findings of Fact and Analysis of Evidence" section, the psychologist wrote Plaintiff "has a [mental RFC] for semi-skilled tasks."

3

*Id.* at 90. Then, in the "Mental Residual Functional Capacity Assessment" (MRFC) section, the psychologist opined that Plaintiff had moderate restrictions of daily activities, and moderate difficulties in maintaining social functioning and concentration, persistence or pace. *Id.* at 92. In narrative, Dr. RC found:

> Attention [and] concentration are mildly to moderately compromised. [Plaintiff] has the capacity to maintain an adequate level of both to fulfill obligations in a work setting most of the time. Some lapses in both are likely to occur from time to time. Pace is adequate for employment. Persistence is variable.

*Id.* at 97. The State psychologist then opined that Plaintiff "would perform better in a setting where he can work mostly alone [and] with limited requirements to interact with co-workers. Would not interact well with the public." *Id.* at 98. Finally, in summary, Dr. RC wrote Plaintiff had the following MRFC:

> [Plaintiff] can perform simple and some complex tasks with routine supervision. [Plaintiff] can relate to supervisors and peers on a superficial work basis. [Plaintiff] cannot work effectively with the general public but can tolerate incidental contact at a superficial level. [Plaintiff] can adapt to a work situation.

*Id.*

Discussing Dr. RC's MRFC opinion as it related to Plaintiff's RFC, the ALJ gave it "some weight" and then, in referencing the exhibits, wrote "(at least semi-skilled)." *Id.* at 650.[2] The ALJ then adopted Dr. RC's MRFC opinion, modifying it only to Plaintiff's benefit, finding Plaintiff can: (1) understand, remember, and carry out simple, routine, and repetitive tasks; (2) relate to supervisors and co-workers on a superficial work basis; (3) respond appropriately to usual work situations; and (4) have no contact with the general public. *Id.* at 649.

Plaintiff claims the ALJ committed legal error because he failed to explain why he gave Dr. RC's opinion only "some weight" and because he failed to acknowledge the psychologist's

---

[2] When discussing the opinion at Step Three, the ALJ gave it "great weight." AR 648.

4

opinion regarding Plaintiff's intermittent lapses in attention ad concentration and need to work mostly alone with limited co-worker interaction. *See* Pl.'s Br. at 22. The Court finds no grounds for reversal in these arguments.

Although Dr. RC was a non-examining psychologist, the ALJ was required to properly consider the opinion and provide legitimate reasons for discounting it. *See* 20 C.F.R. § 404.1527(c). However, the Court must review the ALJ's findings with an application of common sense. *See Keyes-Zachary*, 695 F.3d at 1167. With such a review, and based on his discussion and citation, it is apparent that the ALJ was giving "some weight" only to Dr. RC's initial finding that Plaintiff could perform "at least semi-skilled" work. AR 650. Indeed, the ALJ *adopted* the State agency psychologist's MRFC opinion, modifying it only slightly, and to Plaintiff's benefit. *Compare* AR 98 (Dr. RC's opinion that Plaintiff can perform "simple and some complex tasks"), *with id.* at 649 (finding Plaintiff can perform "simple, routine, and repetitive tasks"). So, the Court declines to reverse the Commissioner's decision based on the ALJ's alleged failure to discuss why he gave Dr. RC's opinion only "some weight."

Reversal is also not warranted on Plaintiff's claim that the ALJ ignored Dr. RC's opinion regarding Plaintiff's intermittent lapses in attention and concentration and need to work mostly alone with limited co-worker interaction. The latter is clearly incorporated in Plaintiff's RFC restriction involving only superficial contact with supervisors and co-workers and no contact with the general public. As for the first, the Court finds the moderate limitation in sustained concentration and pace was properly accounted for in the RFC.

In *Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016), a psychologist assessed the claimant's MRFC and found, in relevant part, that she was "moderately limited" in her ability to: (1) maintain concentration, persistence, and pace; (2) complete a normal workday and workweek "without

5

interruption for psychologically based systems;" and (3) perform at a consistent pace. *Id.* at 1268. The ALJ considered the opinion and found that the claimant could "engage in only simple, repetitive, and routine tasks." *Id.* at 1269. On appeal, the Tenth Circuit rejected the claimant's argument that the ALJ erred in failing to specifically include, in the RFC, the moderate impairments that the psychologist noted. *See id.* at 1268-69. The court held that "in our circuit, . . . an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity." *Id.*

The analysis in *Smith* is applicable here. Similarly to *Smith*, Dr. RC noted that Plaintiff was moderately limited in his ability to: (1) maintain attention and concentration; (2) perform activities within a schedule, maintain regular attendance, and be punctual; and (3) complete a "normal workday or workweek without interruptions from psychologically based symptoms . . . ." AR 97. The psychologist then explained those findings, writing that Plaintiff's "[a]ttention [and] concentration are mildly to moderately compromised" and noting that his "pace is adequate for employment" and "[p]ace is variable." *Id.* Finally, in his "additional explanation," Dr. RC summarized all the above and opined that Plaintiff can, in relevant part, "perform simple and some complex tasks with routine supervision." *Id.* at 98. The ALJ then essentially adopted that opinion, finding, as in *Smith*, that Plaintiff can carry out "simple, routine, and repetitive tasks." *Id.* at 649. Applying *Smith*, the Court thus finds that no reversible error occurred.

### B. The Substantial Evidence of Record

Plaintiff further argues that the ALJ failed to discuss uncontroverted and/or significantly probative evidence that conflicted with his findings. *See* Pl.'s Br. at 25-28. Notably, an ALJ need not mention every piece of evidence, only "the uncontroverted evidence he chooses not to rely on as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-1010

6

(10th Cir. 1996); *see also Watts*, 705 F. App'x at 762 ("While the 'record must demonstrate the ALJ considered all of the evidence,' there is no requirement an ALJ 'discuss every piece of evidence.'" (citation omitted)).

Focusing on the medical evidence, Plaintiff alleges that the ALJ (1) erroneously noted the absence of audiovisual hallucinations at an October 2014 doctor's visit, when in fact, Plaintiff reported "both auditory and visual hallucinations," and (2) incorrectly said Plaintiff had denied hallucinations in February 2016, when in fact the subject was not addressed at that time. Pl.'s Br. at 27. Similarly, Plaintiff claims that the ALJ described a treatment note as reflecting Plaintiff had an intact memory, when in fact testing on the subject was being conducted. *Id.* Finally, Plaintiff claims that the ALJ "almost entirely failed to address the fact that at various points between December 2013 and August 2016, [Plaintiff] did exhibit a depressed or fluctuating mood; flat, tearful, or restricted affect; ruminating thoughts; difficulty trusting others; and hypervigilance" and declined to mention reports that Plaintiff "[made] statements regarding homicidal intent, [experienced] episodic 'rage' with physical outbursts," and "witnessed traumatic scenes of death." *Id.* at 28. However, Plaintiff does not explain how any of this evidence limits his functional abilities in ways not already accounted for in the RFC, and thus fails to show that the evidence has any significantly probative value. *See Clifton*, 79 F.3d at 1009-10; *see also Shiplett v. Astrue*, 456 F. App'x 730, 734 (10th Cir. 2012) (holding that evidence that does not "contradict the ALJ's RFC assessment" does not constitute significantly probative evidence the ALJ was required to discuss).

Plaintiff also challenges the ALJ's reliance on his daily activities – primarily his childcare duties and driving abilities – and argues that the ALJ ignored evidence that Plaintiff only took his children to and from school (and sometimes forgot to do even that), became disoriented if driving "without GPS," and engaged in unnecessary spending. Pl.'s Br. at 26-27. Again, however,

7

Plaintiff fails to tie this information to any functional limitation allegedly missing from the RFC, and he does not challenge the ALJ's credibility assessment.[3]

Finally, Plaintiff complains that the ALJ repeatedly referenced Plaintiff's travel to Thailand and/or China, but failed to acknowledge that Plaintiff sold his favorite car to travel and then sustained a financial loss, thus showing Plaintiff's "poor judgment." Pl.'s. Br. at 26. But Plaintiff does not explain how his "poor judgment" translates into a functional limitation for purposes of disability, and, again, Plaintiff does not challenge the ALJ's credibility assessment.

In sum, Plaintiff fails to establish that any evidence the ALJ failed to specifically discuss and/or misstated was so significantly probative that reversal is required.

### C. Alleged Conflict Between the VE Testimony and DOT

At step five, the burden shifts to the Commissioner to show that the claimant retains a sufficient RFC to perform work, existing in significant numbers in either the regional or national economy, given the claimant's age, education and work experience. *See Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also Lane v. Colvin*, 643 F. App'x 766, 771 (10th Cir. 2016) ("The relevant test at step five in a disability case is whether there is a significant number of jobs in the regional or national economy."). Plaintiff claims the Commissioner failed to satisfy this burden because the ALJ failed to obtain an adequate explanation as to inconsistencies between the VE's testimony and the DOT. In particular, Plaintiff points out that the ALJ limited him to simple,

---

[3] The Court declines to find a credibility challenge within Plaintiff's one-sentence reference to the ALJ's credibility finding. *See* Pl.'s Br. at 28. Plaintiff does not cite any cases involving the ALJ's duties when assessing credibility and otherwise fails to develop any argument on the matter. *See id.* The Court will not address undeveloped arguments nor will it wade through the records to find evidence to support such arguments. *See Wall*, 561 F.3d at 1066. The Court likewise finds no developed argument in Plaintiff's one-sentence focus on the ALJ's rejection of the Veterans Administration's disability findings. *See* Pl.'s Br. at 28; *Strickland v. Astrue*, 496 F. App'x 826, 835 (10th Cir. 2012) ("We do not address the issue because this one-sentence statement does not adequately develop the argument.").

routine, and repetitive tasks, and two of the jobs the VE identified, and the ALJ relied upon, require a reasoning level three based on the DOT description. *See* Pl.'s Br. at 15; *citing* DOT §§ 249.587-018 (document preparer), 379.367-010 (surveillance systems monitor). As described in the DOT, reasoning level three requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." DOT §§ 249.587-018 (document preparer), 379.367-010 (surveillance systems monitor).

As Plaintiff argues, this Court has frequently followed *Hackett v. Barnhart*, 395 F.3d 1168 (10th Cir. 2005), where the Tenth Circuit found that an RFC limiting a claimant to "simple and routine work tasks" appeared inconsistent with jobs requiring a reasoning level of three, *id.* at 1176, and has remanded cases to allow the ALJ to address the apparent conflict. *See, e.g., Farris v. Berryhill*, No. CIV-16-359-HE, 2017 WL 2303521 at *1, *6 (W.D. Okla. May 25, 2017) (unpublished district court order) (distinguishing unpublished cases and collecting cases in support). Here, the ALJ asked the VE to consider whether a claimant with Plaintiff's RFC could perform work in the national economy, and she replied in the affirmative (citing DOT §§ 249.587-018 (document preparer), 379.367-010 (surveillance systems monitor)), "consistent with the DOT but also based on [her] vocational experience." AR 693. She then explained that the "DOT does not define, necessarily, being around co-workers or the public." *Id.*

A VE's experience is sufficient evidence and can overcome any conflict between the VE's testimony and a DOT description. *See Anders v. Berryhill*, 688 F. App'x 514, 520 (10th Cir. 2017) (finding it "entirely permissible" for the VE to "dr[a]w on her own education and experience" and citing SSR 00-4p, 2000 WL 1898704, at *2 as "listing the VE's experience among the bases for reasonable explanations for conflicts with the DOT"). Here, however, it is unclear whether the

VE was using her own experience to explain that a claimant with Plaintiff's RFC could perform work with a reasoning level three, or if she meant the same claimant could perform the relevant work despite the restrictions related to co-workers and the public. The Court need not decide, however, as Plaintiff can perform the remaining job, DOT § 920.687-030, and thus can still perform work in the national economy.

Plaintiff disagrees on two grounds. First, he argues that the VE, and in turn the ALJ, gave conflicting descriptions of the remaining job. *See* Pl.'s Br. at 16. That is, the VE described the job as "hand packager," with the DOT number 920.687-030, and the ALJ followed suit. AR 655, 693. As Plaintiff notes, DOT § 920.687-030 is actually identified as a hand "bander," while a hand "packager" is listed as DOT § 920.587-018. *See* DOT §§ 920.687-030, 920.587-018. Plaintiff argues that we cannot know which job the VE was actually identifying, but the Court disagrees. The VE gave a specific DOT number and described the relevant job as "sedentary." AR 693. This is entirely consistent with the hand "bander" job. DOT § 920.687-030. Conversely, the hand "packager" job is categorized as "medium" work and would therefore be entirely inconsistent with Plaintiff's physical RFC. *Id.*, § 920.587-018. Thus, the Court finds it most reasonable and appropriate to conclude the VE, and the ALJ, intended to use the title hand "bander" rather than hand "packager."

Second, Plaintiff argues that even if he can perform work as a hand "bander," the job exists in such small numbers that the case must be remanded for the ALJ to determine if there is numerical significance. *See* Pl.'s Br. at 17. The Court disagrees. Although generally the Commissioner should make the determination of numerical sufficiency, the Court may nevertheless "supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where based on the material the administrative law judge did at

least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004).

Here, the VE testified, and the ALJ found, that there are 176 regional hand bander jobs existing in the regional economy, and 23,201 such jobs existing in the national economy. AR 655, 693. In *Rogers v. Astrue*, 312 F. App'x 138 (10th Cir. 2009), the court implied that 11,000 nationally available jobs was a significant number, *id.* at 142, and in *Lynn v. Colvin*, 637 F. App'x 495 (10th Cir. 2016), the court found that 24,900 jobs available throughout the nation was "significant." *Id.* at 499. Applying these cases, the Court has no difficulty concluding that 23,201 jobs is a significant number for purposes of Step 5 of the sequential process and thus declines to remand on this ground.

## VI. Conclusion

The ALJ properly considered the State agency psychologist's opinion and did not overlook significantly probative evidence. And, even if a conflict exists between the VE's testimony and the DOT description for two of the three jobs the ALJ identified, any error is harmless as he can still perform the work of a hand bander, DOT 920.687-030, existing in significant numbers in the national economy.

Accordingly, the decision of the Commissioner is AFFIRMED.

ENTERED this 5th day of March, 2018.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE